1  BROOKS, PIERCE, MCLENDON,
   HUMPHREY & LEONARD, LLP
2  Jimmy Chang SBN 307855
   jchang@brookspierce.com
3  230 North Elm Street
   Suite 2000
4  Greensboro, NC 27401
   PH: (336) 271-3137
5
   LURIE, ZEPEDA, SCHMALZ,
6  HOGAN & MARTIN, APC
   James J. Finsten SBN 234999
7  jfinsten@lurie-zepeda.com
   1875 Century Park East
8  Suite 2100
   Los Angeles, CA 90067
9  PH: (310) 274-8700

10 *Attorneys for Defendant Amur Equipment Finance, Inc.*

11            UNITED STATES DISTRICT COURT
12            CENTRAL DISTRICT OF CALIFORNIA
13

14 SHADI KRANITZ, etc. et al.,          Case No. 8:25-cv-1587-DOC-JDE

15        Plaintiffs,                    **DEFENDANT AMUR
                                         EQUIPMENT FINANCE, INC'S**
16                                       **NOTICE OF MOTION TO**
       v.                                **DISMISS AND MOTION TO**
17                                       **DISMISS; MEMORANDUM OF**
18 BTL INDUSTRIES., a Delaware           **POINTS AND AUTHORITIES**
   corporation; MMP CAPITAL, INC., a
19 New York corporation, DEXT           [Fed. R. Civ. P. 12(b)(6)]
   CAPITAL, LLC, a Delaware limited
20 liability company; TIMEPAYMENT       Date: December 15, 2025
   CORP., a Delaware corporation;       Time: 8:30 a.m.
21 NORTH MILL CREDIT TRUST, a           Courtroom: 10A
   Delaware association; AMUR           (Ronald Reagan Federal Building
22 EQUIPMENT FINANCE, INC., a           and United States Courthouse,
23 Nebraska corporation; and DOES 1-    Santa Ana)
   10, inclusive,
24
25        Defendants.
26
27
28
                               1

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on <u>December 15, 2025</u> at <u>8:30</u> a.m., or as soon thereafter as it may be heard, in <u>Courtroom 10A</u> of the above-titled Court located at the <u>Ronald Reagan Federal Building and United States Courthouse</u> (411 West 4th Street, Room 1053, Santa Ana, CA 92701), Defendant Amur Equipment Finance, Inc. ("Amur") will and hereby does move this Court for an Order dismissing Plaintiffs' Complaint as to Amur.

Amur's Motion to Dismiss is made pursuant to Rule 12(b)(6) on the grounds that Plaintiffs have failed to state a claim against Amur for which relief can be granted. In support of its Motion, Amur relies on the attached Memorandum of Points and Authorites, the Complaint, and such other and further oral and written evidence as may be presented at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Rule 7-3 which took place on October 2, 2025, October 22, 2025, and October 27, 2025 via Zoom, email, and then telephone.

Dated:  October 28, 2025           BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP

                                   LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN, APC


                                   By: <u>Jimmy C. Chang</u>
                                       JIMMY CHANG
                                       Attorneys for Defendant
                                       Amur Equipment Finance, Inc.

2

4935-6645-9498.v9

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. 5

I.      INTRODUCTION ................................................................................. 9

II.     PLAINTIFFS' ALLEGATIONS............................................................. 11

        A.    Plaintiffs allege that BTL—and only BTL—fraudulently
              induced Plaintiffs to purchase the BTL devices. ....................... 11

        B.    Plaintiffs allege that BTL and its financing partner, MMP,
              fraudulently induced Plaintiffs to apply for high-interest
              loans................................................................................... 12

        C.    Plaintiffs allege that MMP fraudulently induced third-
              party lenders to approve undetectable" "split" loans. ............... 12

        D.    Relying on documents filed in another lawsuit, Plaintiffs
              allege that Amur knew or should have known that MMP
              was "splitting" loans................................................................. 13

III.    LEGAL STANDARD ........................................................................ 13

IV.     ARGUMENT.................................................................................... 15

        A.    The Court should dismiss the breach of fiduciary duty claim
              (First Cause of Action), because Plaintiffs fail to allege the
              rare circumstances of complete dominion and control by a
              lender. ..................................................................................... 15

        B.    The Court should dismiss the fraudulent concealment claim
              (Third Cause of Action), because Plaintiffs have not alleged
              any cognizable wrongful acts by Amur. .................................... 17

              1.    The FAC fails to allege any species of fraud against
                    Amur with sufficient particularity. ................................... 18

              2.    The FAC fails to allege a duty to disclose by Amur. ........ 18

              3.    The FAC fails to allege causation between Amur's

4935-6645-9498.v9

purported knowledge of "split" loans and BTL's false
promises................................................................................. 20

C.    The Court should dismiss the breach of contract claim
(Seventh Cause of Action) because Plaintiffs have not
alleged any of the terms of the loan agreements........................ 21

D.    The Court should dismiss the UCL claim (Eighth Cause of
Action) because the allegations are made against BTL. ........... 22

1.    Amur did not violate any laws. ......................................... 23

2.    Amur did not act unfairly. ................................................ 23

3.    Amur did not act fraudulently. ......................................... 24

E.    The Court should dismiss the claim for recission (11th
Cause of Action)................................................................... 24

V.    CONCLUSION ................................................................................. 25

4935-6645-9498.v9

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                          Page(s)

*Ashcroft v. Iqbal*,

    556 U.S. 662, 129 S.Ct. 1937 (2009) ........................................................... 15

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 544, 127 S.Ct. 1955 (2007) ........................................................... 15

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,

    20 Cal.4th 163, 83 Cal. Rptr.2d 548 (1999) ................................................ 24

*Daro v. Superior Court*,

    151 Cal.App.4th 1079, 61 Cal.Rptr.3d 716 (2007) ..................................... 23

*Davis v. Nationstar Mortg., LLC*,

    2016 WL 7178466 (E.D. Cal. Dec. 9, 2016).................................... 20, 21, 26

*Herron v. Best Buy Co. Inc.*,

    924 F. Supp. 2d 1161 (E.D. Cal. 2014) ........................................................ 20

*IIG Wireless, Inc. v. Yi*,

    22 Cal. App. 5th 630, 231 Cal. Rptr.3d 771 (2018) .................................... 16

*Jackson v. Carey*,

    353 F.3d 750 (9th Cir. 2003) ........................................................................ 15

*Kearns v. Ford Motor Co.*,

    567 F.3d 1120 (9th Cir. 2009) ..................................................................... 19

*Keith v. First Horizon Home Loans*,

    No. CV1108130GAFVBKX, 2012 WL 13012474 (C.D. Cal. Apr. 4,

    2012) ....................................................................................................... 17, 21

*Kwikset Corp. v. Superior Ct.*,

    51 Cal.4th 310 (2011).................................................................................... 23

*Langan v. United Servs. Auto. Ass'n*,

    69 F. Supp. 3d 965 (N.D. Cal. 2014) .......................................................... 22

4935-6645-9498.v9

*LiMandri v. Judkins,*

  52 Cal. App. 4th 326, 60 Cal. Rptr. 2d 539 (1997) ..................................... 20

*Lippitt v. Raymond James Financial Services, Inc.,*

  340 F.3d 1033 (9th Cir. 2003) ...................................................... 23

*Marino v. Countrywide Fin. Corp.,*

  26 F. Supp. 3d 955 (C.D. Cal. 2014), aff'd 602 F.App'x 403 (9th Cir.

  2015) .................................................................................... 24

*Marolda v. Symantec Corp.,*

  672 F. Supp. 2d 992 (N.D. Cal. 2009) .................................... 18, 19

*McKell v. Washington Mutual, Inc.,*

  142 Cal. App. 4th 1457, 49 Cal.Rptr.3d 227 (2006) ................................. 22

*Meyer v. One West Bank, F.S.B.,*

  91 F.Supp.3d 1177 (C.D. Cal. 2015) ............................................ 16

*Mozier v. Southern Cal. Physicians Ins. Exchange,*

  (1998) 63 Cal. App. 4th 1022, 74 Cal.Rptr.2d 550 .................................. 16

*Nagy v. Nagy,*

  210 Cal. App. 3d 1262 (Cal. Ct. App. 1989).................................. 21

*Nymark v. Heart Fed. Sav. & Loan Assn.,*

  231 Cal. App. 3d 1089, 283 Cal. Rptr. 53 (1991) .............................. 9, 20, 21

*OCM Principal Opportunities Fund v. CBIC World Mkts. Corp.,*

  157 Cal. App. 4th 835 (Cal. Ct. App. 2007) ................................. 20

*Okura & Co. (America), Inc. v. Careau Group,*

  783 F.Supp. 482 (C.D. Cal. 1991) .............................................. 16

*Papasan v. Allain,*

  478 U.S. 265, 106 S.Ct. 2932 (1986) ......................................... 15

*Perlas v. GMAC Mortg., LLC,*

  187 Cal. App. 4th 429........................................................ passim

4935-6645-9498.v9

*Ramo v. Bank of Am.*, N.A.,

    No. CV1200562DMGJEMX, 2012 WL 13012708 (C.D. Cal. May 1,

    2012) ................................................................................. 20, 21

*Riggins v. Bank of Am.*, N.A.,

    No. SACV 12-0033 DOC, 2013 WL 319285 (C.D. Cal. Jan. 24, 2013)

    ............................................................................... 17, 23, 24, 26

*Scripps Clinic v. Superior Ct.*,

    108 Cal. App. 4th 917, 134 Cal. Rptr. 2d 101 (2003).................................24

*Smith v. Compton*,

    No. CV 22-08439-MWF (BFMX), 2024 WL 5317244 (C.D. Cal. Nov.

    13, 2024) .................................................................................. 15

*Sollberger v. Wachovia Securities, LLC*,

    No. SACV 09-0766 AG (ANx), 2010 WL 2674456 (C.D. Cal. June 30,

    2010) ................................................................................. 15, 25

*Sprewell v. Goden State Warriors*,

    266 F.3d 979 (9th Cir.2001) ................................................................ 15

*Summit Tech., Inc. v. High-Line Medical Instruments Co., Inc.*,

    922 F.Supp. 299 (C.D. Cal. 1996) ......................................................... 14

*Title Ins. and Trust Co. v. California Dev. Co.*,

    171 Cal. 173, 152 P. 542 (1915) ......................................................... 16, 17

*Vargas v. Wells Fargo Bank, N.A.*, No. C,

    12-02008 WHA, 2012 WL 2931220 (N.D. Cal. July 18, 2012) ..................24

*Vess v. Ciba-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003) ............................................................. 19

<u>Statutes</u>

Cal. Civ. Code § 1689..................................................................................25

Cal. Civ. Code § 1689(b)(1) .......................................................................255

4935-6645-9498.v9

Cal. Civ. Code § 1691(b) ................................................................. 26

**Rules**

Fed. R. Civ. P. 8 ............................................................................... 15

Fed. R. Civ. P. 8(a)(2) ..................................................................... 15

Fed. R. Civ. P. 9 ............................................................................... 15

Fed. R. Civ. P. 9(b) .......................................................................... 15

4935-6645-9498.v9

1

## I.    **INTRODUCTION**

"A lender is under no duty to determine the borrower's ability to repay the loan.  The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." *Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th 429, 436, 113 Ca. Rptr. 3d 790, 796 (2010) (internal citations omitted).  "A strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure the success of every investment." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1099, 283 Cal. Rptr. 53, 59 (1991).

According to the First Amended Class Action Complaint ("Amended Complaint" or "FAC"), Plaintiffs are all medical spa (or "medspa") owners who purchased body-contouring or body-shaping devices and who have defaulted, or are at risk of defaulting, on their financing.  Plaintiffs allege that the equipment manufacturer and seller, nonmovant BTL Industries ("BTL"), fraudulently induced Plaintiffs to purchase the devices based on false promises (DE 20 – FAC ¶¶ 30-59) while BTL's financing partner and broker, nonmovant MMP Capital, Inc. ("MMP") fraudulently induced Plaintiffs to finance their purchases with high-interest loans (*Id.* ¶¶ 60-66).

Most pertinently, after BTL and MMP closed their deals with Plaintiffs, MMP fraudulently induced third-party lenders to approve Plaintiffs' loans.  Specifically, MMP would secretly "split" a single financing transaction into separate transactions to make the transaction seem smaller and the loan appear financially sound.  (FAC ¶¶ 67 to 70).  Plaintiffs admit that, had the third-party lenders, such as movant Amur, known that MMP was "splitting" single transactions, they would **not** have approved or purchased the "split" loans.  (*Id.* ¶ 68 [describing the "split" transactions as "undetectable."]).  In

9

fact, as referenced in the FAC, Amur has sued MMP in Nebraska over MMP's fraudulently "split" loans that it has discovered to date. (*Id.* ¶¶ 70-71).

Despite alleging misconduct solely by BTL and MMP, **and despite recognizing that Amur was a victim of MMP**, Plaintiffs have nonetheless sued Amur for breach of fiduciary duty, fraudulent concealment, breach of contract, violation of California's Unfair Competition Law, and recission. Plaintiffs' sole theory against Amur is that Amur "knew or should have known" that MMP was fraudulently "splitting" the loans. (FAC ¶¶ 70-71). Oddly, Plaintiffs borrowed this theory from MMP's defense in Amur's Nebraska lawsuit wherein Amur is aggressively pursuing MMP for the very behavior that Plaintiffs are complaining of. (*Id* ¶ 71).

Nonetheless, this newly added theory, i.e., Amur's purported knowledge, does not save the Complaint, because it is implausible and calls for an unreasonable inference. In other words, given the sensible premise that Amur does **not** have an interest in funding loans that are beyond Plaintiffs' ability to pay, it is illogical for the Complaint to both acknowledge that MMP was deceiving and damaging Amur with "split" loans **and** accuse Amur of knowing about the "split" loans. Under MMP's scheme, the lenders, such as Amur, are the ultimate losers while the seller, BTL, and the commission-based broker, MMP, are the only winners. Indeed, if Amur knew of MMP's fraudulent practice and still wanted to fund these "split" loans, Amur would not be aggressively suing MMP in Nebraska.

In sum, there are no plausible allegations against Amur that would put Amur in a special relationship with the borrowers and thus, Amur had no duty to the Plaintiffs. Accordingly, the Court should dismiss the Complaint as against Amur without leave to amend.

4935-6645-9498.v9

## II.    PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that they each have a loan with Amur (FAC ¶¶ 17-19). Plaintiffs have not provided a copy of their agreements, nor have they alleged the material terms.

### A.    Plaintiffs allege that BTL—and only BTL—fraudulently induced Plaintiffs to purchase the BTL devices.

Plaintiffs allege that BTL fraudulently induced them into purchasing BTL's "breakthrough" medspa devices. (FAC ¶¶ 1-3, 32). Generally speaking, BTL "win[ed] and din[ed]" medspa owners (*Id.* ¶ 6), promised post-purchase support (¶ 7), boasted the popularity of its devices (¶¶ 8-9), employed aggressive marketing tactics (¶ 10), made numerous verbal agreements (¶ 11), and ultimately committed "fraudulent, misleading, and deceptive sales practices…" which induced small businesses to take on six-figure high-interest loans to finance their purchases (¶ 12).

BTL purportedly promised that their devices will generate substantial revenue (FAC ¶ 32) and further promised marketing assistance and guaranteed sales leads (¶¶ 33-34). BTL also exploited the need for multiple six-figure devices (*Id.* ¶ 35), flooded prospective customers with full-scale marketing campaigns (¶ 36), inflated usage and sales data (¶ 37), and fabricated success stories of supposed medspa owners (¶¶ 38-42).

Plaintiffs further allege that BTL verbally promised to put up billboards (FAC ¶¶ 44-45), create custom promotional videos (¶ 46), honor rebates (¶ 47), and limit direct competition (¶¶ 48-51). BTL failed to deliver on these post-purchase services. (*Id.* ¶ 52).

BTL also had a "Minimum Advertised Price" ("MAP") policy, which required Plaintiffs to charge a minimum price for treatments, but which were selectively enforced. (FAC ¶¶ 53-57). Relatedly, Plaintiffs allege that BTL

11

1    charged high prices for proprietary consumables (¶ 56) and made it extremely
2    difficult to resell BTL devices (¶ 58).

3    **B.    Plaintiffs allege that BTL and its financing partner, MMP,**
4    **fraudulently induced Plaintiffs to apply for high-interest loans.**

5    According to Plaintiffs, BTL used MMP as its "preferred financing
6    partner" and the "vast majority of purchasers," including Plaintiffs, executed
7    financing agreements "with MMP at the direction of [BTL]." (FAC ¶ 61).
8    Plaintiffs allege that, after BTL closed a sale, "purchasers were frequently
9    ushered to [MMP] who was prepared to execute an Equipment Financing
10    Agreement, without performing any due diligence to ensure the purchases
11    were sufficiently credit-worthy." (*Id.* ¶ 64). Moreover, "[a]ll of Plaintiffs'
12    financing documents were completed and submitted by BTL employees on
13    Plaintiffs' behalf" and the agreements were MMP's Equipment Financing
14    Agreements. (*Id.* ¶ 65).

15    **C.    Plaintiffs allege that MMP fraudulently induced third-party**
16    **lenders to approve undetectable" "split" loans.**

17    After Plaintiffs had already decided to purchase the BTL devices and
18    after Plaintiffs had already decided to finance their purchases through MMP,
19    MMP then sold and assigned Plaintiffs' loans to third-party lenders, such as
20    Amur. (FAC ¶¶ 62-63).

21    Significantly, Plaintiffs admit that the third-party lenders were also
22    deceived. Plaintiffs allege that MMP "engaged in the practice of financing
23    'split' transactions, which were used to **induce third-party equipment**
24    **financing companies** to approve customer financing that the customer
25    could not afford by splitting one transaction into two smaller transactions and
26    simultaneously assigning them to two different equipment financing
27    companies." (FAC ¶ 67). Using Defendants Dext and North Mill as examples,
28

12

Plaintiffs allege that MMP utilized these "split" transactions, because third-party financing companies would not have otherwise approved the combined transaction, nor would they have approved "either individual transaction **had they known** of the other transaction." (*Id*. ¶¶ 68-69, emphasis added). According to Plaintiffs, "by assigning them to two different equipment financing companies within a short period of time, the "split" transaction was '**undetectable**'..." (*Id*. ¶ 68, emphasis added).

**D.      Relying on documents filed in another lawsuit, Plaintiffs allege that Amur knew or should have known that MMP was "splitting" loans.**

Plaintiffs acknowledge that MMP has "admitted to facilitating these prohibited 'split' transactions" and that Amur has sued MMP in Nebraska specifically because of certain prohibited split transactions (lawsuit referred to as "*Amur v. MMP*"). (FAC ¶ 70. Plaintiffs have also attached an e-mail filed in *Amur v. MMP* wherein MMP admitted to the fraudulent "split" transactions. (*Id*. Exhibit C).

Despite acknowledging that MMP facilitated "split" loans that were "undetectable" (*see again* FAC ¶ 68) and designed to defraud Amur, and despite acknowledging that Amur is suing MMP in Nebraska precisely because of these "undetectable" "split" loans (¶¶ 70-71), Plaintiffs paradoxically adopt MMP's defense in *Amur v. MMP* (¶ 71) and suggest that Amur "knew or should have known" that it was being supplied with false information (*Id*. ¶¶ 5, 70-71). Plaintiffs fail to explain why Amur would want to fund, and ultimately lose money on, "split" loans that were likely to fail.

## III.    LEGAL STANDARD

Dismissal is warranted pursuant to Rule 12(b)(6) "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged

under a cognizable legal theory." *Summit Tech., Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F.Supp. 299, 304 (C.D. Cal. 1996) (internal quotations omitted).

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief" while Rule 9(b) requires a plaintiff to plead fraud with particularity.  Fed. R. Civ. P. 8; Fed. R. Civ. P. 9.  A complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 1940 (2009).

"One common theme" of "Rule 8(a), Rule 9(b), *Twombly*, *Iqbal*" is that "plaintiffs must give a clear statement about what the defendants allegedly did wrong," and thus, "shotgun pleadings," such as when multiple defendants are lumped together "Defendants," are "unacceptable." *Sollberger v. Wachovia Securities, LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010); *see also Smith v. Compton*, No. CV 22-08439-MWF (BFMX), 2024 WL 5317244, at *5 (C.D. Cal. Nov. 13, 2024) (same).

Moreover, a plaintiff cannot rely on "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1940.  A plaintiff also cannot rely on "legal conclusion(s) couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (1986).  Nor can a plaintiff rely on "unwarranted deductions of fact or unreasonable inferences." *Sprewell v. Goden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001).

Finally, dismissal with prejudice is appropriate where the "deficiencies

of the complaint could not possibly be cured by amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

## IV.   ARGUMENT

Amur, as a third-party lender, was "under no duty to determine the [Plaintiffs'] ability to repay the loan" and its efforts to determine Plaintiffs' creditworthiness and ability to repay is "for [its] protection, not [Plaintiffs']." *Perlas,* Cal. App. 4th at 436.   Moreover, Plaintiffs acknowledge that Amur was itself a victim of MMP's prohibited "split" loans and that Amur is aggressively pursuing MMP in *Amur v. MMP.* (*See* FAC ¶¶ 70-71).   Because the law does not impose a duty on Amur and because Plaintiffs admit that Amur was also a victim MMP, Plaintiffs needed to allege highly specific and cognizable bad acts by Amur to save their Complaint.   Instead, Plaintiffs suggest a paradox, i.e., that Amur knew about the "split" loans. (*See Id.* FAC ¶¶ 70-71).   Accordingly, not only does the Amended Complaint fail to allege the special facts necessary to impose a duty on Amur, but it relies on an implausible theory.

**A.**   **The Court should dismiss the breach of fiduciary duty claim (First Cause of Action), because Plaintiffs fail to allege the rare circumstances of complete dominion and control by a lender.**

Breach of fiduciary duty requires "(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 646, 231 Cal. Rptr.3d 771, 787-88 (2018) (quoting *Mozier v. Southern Cal. Physicians Ins. Exchange,* (1998) 63 Cal. App. 4th 1022, 1044, 74 Cal.Rptr.2d 550).   "[A] borrower-lender relationship does not create a fiduciary duty." *Meyer v. One West Bank, F.S.B.*, 91 F.Supp.3d 1177, 1183 (C.D. Cal. 2015).   However, if a lender "exercises complete dominion and control over borrower's business, the lender

becomes a fiduciary to the borrower." *Okura & Co. (America), Inc. v. Careau Group*, 783 F.Supp. 482, 494 (C.D. Cal. 1991) (citing *Title Ins. and Trust Co. v. California Dev. Co.*, 171 Cal. 173, 205-06, 152 P. 542 (1915)).   Stated differently, a plaintiff must allege that the lender was "an active participant in an enterprise beyond the domain of a usual money lender." *Riggins v. Bank of Am.*, N.A., No. SACV 12-0033 DOC, 2013 WL 319285, at *10 (C.D. Cal. Jan. 24, 2013).

For example, in *Perlas*, even though the complaint alleged that the lender fabricated and inflated the borrowers' "true income" so that they appeared qualified for their loans, the Court of Appeal still held that the lender did not breach any duty to the borrowers given that "creditworthiness and ability to repay" is for the lender's protection.  187 Cal. App. 4th at 436. Similarly, in *Riggins*, the Court dismissed the borrowers' breach of fiduciary duty claim because allegations that the lender "fail[ed] to disclose illegal and inequitable terms of the subject loans, falsif[ied] the loan applications, and charg[ed] excessive and improper fees…" still did not rise to the level of an "active participant."  2013 WL 319285, at *10; *see also Keith v. First Horizon Home Loans*, No. CV1108130GAFVBKX, 2012 WL 13012474, at *6 (C.D. Cal. Apr. 4, 2012) (dismissing the borrowers' breach of fiduciary duty claim because the borrowers' alleged failure to "read or understand the terms of the loan documents" and their sole reliance on the lender's "expertise in offering them an appropriate loan" failed to establish a fiduciary relationship).

Here, the FAC fails to allege any special facts showing how Amur, a third-party lender, exercised "complete dominion and control over [Plaintiffs'] business" such that a fiduciary relationship was created.   Instead, all allegations of dominion and control are clearly made against BTL (e.g., price-fixing by BTL [FAC ¶¶ 53-57] or restrictions on resale by BTL [¶ 58].).   In

16

4935-6645-9498.v9

turn, the Court should reject Plaintiffs' conjecture that MMP's "voluntary act" of sending financing applications to Amur designed to avoid Amur's underwriting practices somehow imposed a fiduciary duty on Amur. (*Id.* ¶¶ 88-93).

Finally, even if Amur somehow knew or should have known that Plaintiffs' loans were "split" and that Amur was being defrauded by MMP (which is an unreasonable inference), it was to Amur's own detriment as the lender. *See again*, *Perlas* 187 Cal. App. 4th at 436.

Accordingly, Plaintiffs have failed to allege the rare circumstances necessary to establish a plausible fiduciary relationship between Amur and Plaintiffs and the Court should dismiss the First Cause of Action.

**B.    The Court should dismiss the fraudulent concealment claim (Third Cause of Action), because Plaintiffs have not alleged any cognizable wrongful acts by Amur.**

"California law identifies the elements of a fraud claim as: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001 (N.D. Cal. 2009).

Per the Third Cause of Action (FAC ¶¶ 89-96), Plaintiffs allege that Amur: (a) "knew or should have known that BTL was supplying [it] with falsified or otherwise grossly inaccurate data and financial documents in order to secure loans for Plaintiffs and the Class Members"; and (b) "also knew or should have known that the terms of these loans were materially misrepresented to Plaintiffs..." (*Id.* ¶ 106).  Plaintiffs' bold accusations can only be based on their preceding suggestion that Amur knew or should have known about MMP's "split" loans (*Id.* ¶¶ 70-71) even though the "split" loans

17

were "undetectable" (¶ 68). Setting aside the implausibility of Plaintiffs' theory against Amur (discussed throughout), the Third Cause of Action fails to state a claim against Amur for the specific reasons below.

    1.   <u>The FAC fails to allege any species of fraud against Amur with sufficient particularity.</u>

"Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The circumstances of each must be pleaded with specificity." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 997 (N.D. Cal. 2009). "In a fraud claim against a corporation, a plaintiff must allege the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written." *Perlas*, 187 Cal. App. 4th at 434.

The FAC fails to state a claim for fraud against Amur, because the allegations are not made with the level of particularity required by Rule 9(b) (who, what, when, where, and how). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). For example, Plaintiffs do not even specify the dates of purchase, which is critical for their theory that their loans with Amur were one of the "split" loans. Equally significant, Plaintiffs do not explain why Amur would have known what BTL's salespersons were saying and doing, e.g., promising billboards in Los Angeles.

    2.   <u>The FAC fails to allege a duty to disclose by Amur.</u>

"[T]here are four circumstances in which an obligation to disclose may arise: 1) when the defendant is in a fiduciary relationship with the plaintiff; 2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; 3) when the defendant actively conceals a material fact from the plaintiff; and 4) when the defendant makes partial representations but

also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 60 Cal. Rptr. 2d 539, 543 (1997).

A defendant has "exclusive knowledge" when "according to the complaint, defendant knew of this defect while plaintiffs did not, and given the nature of the defect, it was difficult to discover." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2014). "Generalized allegations with respect to exclusive knowledge are insufficient to defeat a dismissal motion." *Id.* Moreover, a duty to disclose arising under a defendant's "exclusive knowledge" "presupposes the existence of some other relationship between plaintiff and defendant in which a duty to disclose can arise." *LiMandri*, 52 Cal. App. 4th at 336-37; *see also Davis v. Nationstar Mortg., LLC,* No. 216CV2599KJMCKDPS, 2016 WL 7178466, at *10 (E.D. Cal. Dec. 9, 2016) citing *OCM Principal Opportunities Fund v. CBIC World Mkts. Corp.*, 157 Cal. App. 4th 835, 845 (Cal. Ct. App. 2007) ("[a] plaintiff must show that the defendant had a duty to disclose the concealed facts."). Similarly, "there is no moral blame [where] plaintiff was in a position to protect [herself] form loss." *Nymark*, 231 Cal. App. 3d at 1099.

In *Perlas*, the Court of Appeal affirmed dismissal of borrowers' fraudulent misrepresentation and concealment claims based on the lender's alleged concealment of inflated income, because "a lender owes no duty of care to the borrowers in approving their loan" and because "the lender's efforts to determine the creditworthiness and ability to repay" are for its own protection. 187 Cal. App. 4th at 436; *see also Ramo v. Bank of Am.*, N.A., No. CV1200562DMGJEMX, 2012 WL 13012708, at *1 (C.D. Cal. May 1, 2012) ("Regardless, the law is clear that [lenders] cannot be liable for fraud merely by entering into a loan agreement with [a borrower] that he could not afford.").

4935-6645-9498.v9

Just like the lenders in *Perlas*, *Ramo,* and *Keith* who approved loans at their own risk, Amur—as between Amur and Plaintiffs—also approved and purchased the "split" loans at its own risk.  In fact, the lenders in *Perlas*, *Ramo*, and *Keith* had **themselves** fabricated the borrowers' ability to pay and our district courts still found no duty by the lenders to inform the borrowers. If a lender who knowingly inflates a borrower's ability to pay does not owe a duty to disclose to the borrower, then a lender who was **deceived** about a borrower's ability to repay (like Amur) surely does not owe a duty to disclose. Stated differently, the FAC does not allege that Amur had "exclusive knowledge" except by way of a generalized allegation that Amur "knew or should have known".  In turn, as between Plaintiffs and Amur, the Plaintiffs were in a "position to protect [themselves] from loss."  *See again*, *Nymark*, 231 Cal. App. 3d at 1099.

> 3. <u>The FAC fails to allege causation between Amur purported knowledge of "split" loans and BTL's false promises.</u>

Finally, the complaint "must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated." *Davis v. Nationstar Mortg., LLC*, No. 216CV2599KJMCKDPS, 2016 WL 7178466, at *10 (E.D. Cal. Dec. 9, 2016) citing *Nagy v. Nagy*, 210 Cal. App. 3d 1262, 1269 (Cal. Ct. App. 1989).  For example, in *Davis*, the district court dismissed the borrowers' fraudulent concealment claim for lack of causation, i.e., the plaintiff alleged that the lender had concealed the fact that it had securitized the home loan, but this concealment did not "impact the parties rights and obligations regarding the [home loan]…"  *Id*.  2016 7178466.

Like in *Davis*, the FAC fails to allege a "cause and effect" between Amur's alleged concealment and Plaintiffs' injuries.  Again, before Amur was

4935-6645-9498.v9

1    assigned any of Plaintiffs' loans, Plaintiffs had already decided to purchase

2    multiple six-figure medspa devices with high-interest loans because they

3    believed BTL's false promises of substantial profits. (*See* FAC ¶¶ 30-52). In

4    other words, Amur's approval of Plaintiffs' loans at its own risk and to its own

5    detriment did **not** cause BTL to back out of its promises or cause the

6    machines to generate less money than expected.

7                                   ***

8         Based on the foregoing, the Court should dismiss the Third Cause of

9    Action for fraudulent concealment.

10   **C.    The Court should dismiss the breach of contract claim**

11        **(Seventh Cause of Action) because Plaintiffs have not alleged**

12        **any of the terms of the loan agreements.**

13        "A cause for breach of contract requires pleading of a contract, plaintiff's

14   performance or excuse for failure to perform, defendant's breach and damage

15   to plaintiff resulting therefrom." *McKell v. Washington Mutual, Inc.*, 142 Cal.

16   App. 4th 1457, 1489, 49 Cal.Rptr.3d 227 (2006). "A written contract may be

17   pleaded either by its terms—set out verbatim in the complaint or a copy of

18   the contract attached to the complaint and incorporated therein by

19   reference—or by its legal effect." *Id.* citing 4 Witkin, Cal. Procedure (4th ed.

20   1997). "In order to plead a contract by its legal effect, plaintiff must 'allege

21   the substance of its relevant terms.'" *Id.* "[T]he Court must be able generally

22   to discern at least what material obligation of the contract the defendant

23   allegedly breached." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965,

24   980 (N.D. Cal. 2014).

25        Plaintiffs do not allege any material terms of the agreements with Amur

26   and do not allege how Amur has breached its agreements. Plaintiffs allege

27   breach of contract because "one such agreement" out of eight possible

28

                                    21

4935-6645-9498.v9

agreements with four different lenders contains a purportedly illusory provision (FAC ¶¶ 17-19, 131).  Plaintiffs otherwise allege that Amur's financing agreement contains a personal guaranty that is like the one quoted at Paragraph 65.  These allegations are insufficient for a breach of contract claim and the Seventh Cause of Action should be dismissed.

**D.    The Court should dismiss the UCL claim (Eighth Cause of Action) because the allegations are made against BTL.**

To bring a claim under the California Unfair Competition Law ("UCL"), Plaintiffs must show an "unlawful, unfair, or fraudulent business act or practice…" *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (internal citations omitted).  Moreover, "[t]o establish standing under the UCL a plaintiff must establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice… that is the gravamen of the claim."  *Riggins v. Bank of Am., N.A.*, No. SACV 12-0033 DOC, 2013 WL 319285, at *8 (C.D. Cal. Jan. 24, 2013) citing *Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 337, 120 (2011).  "There is no causation when a complaining party would suffer the same harm whether or not a defendant complied with the law."  *Id.* citing *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1099, 61 Cal.Rptr.3d 716 (2007).

For example, in *Riggins*, even though the borrower had sufficiently alleged an unlawful activity, i.e., that the lender had recorded a fraudulent assignment of deed in connection with a foreclosure, the borrower nonetheless lacked standing to pursue a UCL claim because the assignment did not cause plaintiff to default on his loan.  2013 WL 319285, at *9; *see also Marino v. Countrywide Fin. Corp.*, 26 F. Supp. 3d 955, 963 (C.D. Cal. 2014) *aff'd* 602 F.

22

App'x 403 (9th Cir. 2015) (dismissing borrower's UCL claim because borrower failed to allege how the lenders owed him a duty to disclose the "actively concealed the fact" that home prices were going to decline and that borrowers with second mortgages were at a "substantially increased risk.").

Under the Eighth Cause of Action (FAC ¶¶ 132-150), Plaintiffs allege that "Defendants" committed business practices that were unlawful (¶¶ 144-150), unfair (¶¶ 137-139), and fraudulent (¶¶ 140-143). These allegations all fail to state a UCL claim against Amur.

     1.   <u>Amur did not violate any laws.</u>

"Under the 'unlawful' prong, a practice violates the UCL if it also violates another state or federal law…" *Riggins*, 2013 WL 319285, at \*6 citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal. Rptr.2d 548 (1999). Plaintiffs contend that, because of "AMUR's various violations of California law, as alleged in previous paragraphs," Amur acted unlawfully. (*Id.* ¶ 148). However, the FAC does not assert claims against Amur for antitrust (Fourth Cause of Action) and for false advertising (Ninth Cause of Action). Plaintiffs assert those claims solely against BTL and/or MMP. Thus, Plaintiffs do **not** allege that Amur violated any laws.

     2.   <u>Amur did not act unfairly.</u>

"Likewise, a claim based on the unfair business act or practice prong of the UCL must be 'tethered' to allegations that defendants violated another law." *Vargas v. Wells Fargo Bank, N.A.*, No. C 12-02008 WHA, 2012 WL 2931220, at \*3 (N.D. Cal. July 18, 2012) citing *Scripps Clinic v. Superior Ct.*, 108 Cal. App. 4th 917, 927, 134 Cal. Rptr. 2d 101, 106 (2003). Under the unfair prong, Plaintiffs contend that Amur "knew or should have known" that BTL was fraudulently inducing Plaintiffs to purchase the BTL devices. (FAC

¶ 138, Points 4 & 5).  This is unfounded speculation. As discussed in the prior sections, Amur has no motive to approve loans that are likely to fail and likely to damage Amur. Regardless, these allegations are not "tethered" to any allegation that Amur violated any laws and so, it must fail.

       3.    <u>Amur did not act fraudulently.</u>

Under the fraud prong, Plaintiffs allege misconduct using the omnibus term "Defendants", which the Court should reject as a "shotgun pleading." *See again Sollberger*, 2010 WL 2674456, at *4.  Based on the preceding "who, what, when, where and how" allegations, we know that BTL **exclusively** committed the alleged acts, e.g., "fraudulent and deceptive representations through sales representatives…etc." (FAC ¶ 141) and "unrealistic earnings potential based upon inflated or completely false sales data…etc." (¶ 142).

***

Accordingly, Plaintiffs have failed to allege any of the UCL prongs against Amur, and the Court should dismiss the Eighth Cause of Action.

**E.    The Court should dismiss the claim for recission (11th Cause of Action).**

California Civil Code § 1689 sets forth seven grounds for rescinding a contract, including where the consent of the rescinding party was "obtained through, duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds…" Cal. Civ. Code § 1689(b)(1). "[T]o effect a rescission a party to the contract must… restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so." Cal. Civ. Code § 1691(b). "[R]escission is not a freestanding cause of action, but rather relief that may be granted as a result of unlawful conduct." *Davis*, 2016 WL

24

1  7178466, at *13 (dismissing the "claim" for rescission because the complaint

2  failed to state "even a single cognizable claim" against the lenders).   For

3  example, in *Riggins*, the Court held that, even where the lender admitted that

4  they knew that the loans were "subprime" and that the "subprime loans led

5  to a higher incidence of default," this was still insufficient to justify rescission.

6  2013 WL 319285, at *13.

7         Under the Eleventh Cause of Action (FAC ¶¶ 169-175), Plaintiffs

8  exclusively accuse BTL of wrongdoing, e.g., BTL made false sales projections

9  (FAC ¶¶ 170-171) and BTL promised post-purchase support (¶¶ 172-173).

10  There is no mention of "Amur" or even "Defendants."   The preceding 168

11  Paragraphs also fail to allege any facts in support of rescission.  Finally, even

12  if Amur "knew or should have known" about MMP's "split" loans (which it did

13  not), then, just like in *Riggins*, knowledge of these subprime loans does not

14  justify recissions.  Accordingly, the Court should dismiss the Eleventh Cause

15  of Action for rescission.

16                           **V.    CONCLUSION**

17         Amur did not sell the BTL devices to Plaintiffs.  Amur did not convince

18  Plaintiffs to finance their purchases.  Amur is a third-party lender who was

19  assigned Plaintiffs' loans after the fact and ultimately took the loss when

20  Plaintiffs did not make their payments.  As such, Amur did not owe Plaintiffs

21  any duty.  Plaintiffs have otherwise failed to allege the specific and unique

22  facts necessary to impose such a duty on Amur.  Based on the foregoing

23  reasons, the Court should dismiss the Complaint as against Amur.

24

25

26

27

28

4935-6645-9498.v9

1    Dated: October 28, 2025

2                                                 LURIE, ZEPEDA, SCHMALZ,
                                                  HOGAN & MARTIN APC
3
                                                  BROOKS, PIERCE, McLENDON
4                                                 HUMPHREY & LEONARD LLP

5                                                 By: /s/ Jimmy C. Chang

6                                                 *Attorneys for Defendant*
                                                  *Amur Equipment Finance, Inc.*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief contains 6154 words, which complies with the word limit of L.R. 11.6.1 and does not exceed 25 pages (July 28, 2025 New Case Order).

Dated: October 28, 2025        BROOKS, PIERCE, MCLENDON,
                               HUMPHREY & LEONARD LLP

                               By: /s/ Jimmy C. Chang
                               *Attorneys for Defendant*
                               *Amur Equipment Finance, Inc.*

1

## PROOF OF SERVICE

2        The undersigned hereby certifies that, on the date below, the foregoing

3   **NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS**

4   **AND AUTHORITIES** was electronically served on all parties who have

5   appeared in this action.

6

7   Dated: October 28, 2025        BROOKS, PIERCE, MCLENDON,
                                    HUMPHREY & LEONARD LLP
8
                                    By: /s/ Jimmy C. Chang
9                                   *Attorneys for Defendant*
                                    *Amur Equipment Finance, Inc.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28